RONALD SINN, APPELLANT, V. CITY OF SEWARD, A CITY OF THE FIRST CLASS, ET AL., APPELLEES.

523 N.W.2d 39

Filed October 18, 1994.    No. A-93-025.

Robert Wm. Chapin, Jr., for appellant.

Jerry L. Pigsley, of Harding & Ogborn, for appellees.

SIEVERS, Chief Judge, and CONNOLLY and HANNON, Judges.

SIEVERS, Chief Judge.

This matter is before us upon Ronald Sinn's appeal after the district court for Seward County sustained the demurrer to his third amended petition and dismissed the case. The issues presented are, first, whether Sinn timely perfected his appeal; second, whether the third amended petition was subject to the demurrer; and third, even if so, whether leave to amend should have been granted.

### ALLEGATIONS OF THIRD AMENDED PETITION

We summarize the allegations of the third amended petition as follows: The first paragraph of the third amended petition alleges that the action is brought pursuant to 42 U.S.C. § 1983 (1986), 42 U.S.C. § 1988 (1989), Neb. Rev. Stat. § 20-148 (Reissue 1991), and "[for] breach of contract." Sinn works for the City of Seward in the waste water department and has done so since 1981. The individually named defendants are the city administrator of Seward and four city council members. The estate of Fred J. Welsh is named as a defendant "as a claim based on this action has been filed in the County Court of Seward County in PR 92-01." On November 30, 1989, Sinn "filed a grievance contesting his rate of pay, salary grade, and classification," but alleges that such grievance "was denied by

Mayor Fred Welsh." Sinn requested a hearing before the city council, but alleges that all the defendants and Mayor Welsh refused "to process the plaintiff's grievance." Sinn alleges that he filed another grievance on January 22, 1991, and received a negative response from the city administrator. However, prior thereto, in July 1990, Sinn, along with other unnamed employees, filed a petition with the Commission of Industrial Relations (CIR) alleging a dispute as to "wages, terms, and conditions of employment." The CIR granted the City of Seward's motion to dismiss on November 1, 1990, finding that "there is no allegation or evidence of the existence of an industrial dispute." No appeal was taken from this determination. During the pendency of the CIR action, Sinn was notified that the salary increase approved by the defendants on July 23, 1990, would be frozen for 1 year or until further notice. Sinn alleged that his increase for the 1990-91 fiscal year would have been $1,086.80. The city administrator indicated to Sinn that the city had elected to freeze wages for nonappointed employees in the waste water and water departments as a result of unexpected litigation costs incurred by the city in the CIR proceeding, causing the city to have insufficient funds with which to pay increases to waste water and water employees, including Sinn.

Sinn alleges that the actions of the defendants constituted a taking of $41.80 per pay period from his salary which was accomplished without a hearing or notice to him and in retaliation for his association with other employees who brought suit in the CIR to litigate the issue of their pay and treatment by the city "which is of public concern." Sinn alleges that the actions of the defendants are for the purpose of prohibiting and discouraging Sinn from associating with others about policies, wages, hours, and conditions of employment.

Sinn alleges a Fifth Amendment right to a hearing regarding the wage freeze. He also alleges that his civil rights under § 20-148 have been denied by the taking of his money without notice or hearing, contrary to article I, § 3, of the Nebraska Constitution, and that such taking is in retaliation for his exercise of his right of association as guaranteed by the 1st and 14th Amendments to the U.S. Constitution and by the

Constitution of the State of Nebraska.

The third amended petition further alleges the existence of a. personnel manual setting forth a grievance procedure which allows an aggrieved employee to protest salary decreases and that on January 22, 1991, Sinn filed "a grievance contesting the taking of his money." The third amended petition alleges that under Seward city ordinance § 2-101, the Finance, Audit, Budget, and Personnel Committee handles employee grievances as a fact finder and reports to the full city council for final determination, but that the defendants refused to comply with § 2-101 and denied Sinn a factfinding hearing and a hearing before the full city council. The prayer of the third amended petition asks for a finding that the defendants had violated Sinn's civil and due process rights by denying him his property in violation of the 5th and 14th Amendments to the U.S. Constitution and article I, § 3, of the Nebraska Constitution. Sinn also alleges the denial of his First Amendment right of freedom of expression and association. Sinn alleges that he has suffered actual damages from lost pay in the past and in the future. Sinn also claims entitlement to punitive damages and to attorney fees under 42 U.S.C. § 1988.

The foregoing represents an attempted distillation of Sinn's 14-page, 51-paragraph third amended petition. This petition also has pleadings attached from the action before the CIR.

## PROCEDURAL HISTORY

On August 11, 1992, the defendants demurred to the third amended petition for the reasons that it did not state facts sufficient to constitute a cause of action, the court had no jurisdiction over the subject matter, and the court had no jurisdiction over the estate of defendant Welsh. The demurrer included a notice of hearing for August 31. Thirty minutes after the appointed hour, the court took up the demurrer of the defendants, reciting that Sinn did not appear in person or by counsel. After hearing argument from the defendants, the trial court stated on the record:

> [D]efendants' demurrer to plaintiff's third amended petition should be and is sustained. Third amended petition is dismissed *with prejudice.* I'm going to take the

application for attorney fees under advisement. . . . I do want to study that a bit further. But to that extent if you want to prepare an order and send it to me, I'll entertain it accordingly.

(Emphasis supplied.)

No trial docket is included within the transcript before this court; however, the "Judge's Notes," which does not bear a file stamp of the clerk of the court, is dated August 31, 1992, and has a date of service upon counsel of September 1, 1992. The document states: "Defendants' demurrer argued and sustained in open court. Plaintiff's third amended petition is dismissed *without prejudice.* Application for attorney's fees reserved and taken under advisement. Clerk will please notice." (Emphasis supplied.)

On September 2, the trial court signed a 7-page document entitled "Findings and Order" which was file stamped by the clerk of the district court that same day. This document sets forth the ruling that "the Defendants' Demurrer should be sustained and the Plaintiff's Third Amended Petition should be dismissed *with prejudice.*" (Emphasis supplied.) The trial court made a specific finding denying Sinn another opportunity to amend the petition, since "no reasonable possibility exists that Plaintiff will, by amendment, be able to state a cause of action."

On September 11, Sinn filed a motion for new trial asking the trial court to set aside and vacate its order of September 2. The district court held a hearing on this motion on October 26, at which time the trial court observed on the record that the first order of dismissal was without prejudice, and

to that extent the order that was prepared and forwarded [September 2] changes that to read with prejudice. I think that's a — that's a modification of my previous order and for purposes of extending the statute of limitations I think extends it then another day. I'm going to find the motion for new trial is timely made.

However, on December 7, the district court signed and filed an order finding that the motion for new trial was filed on the 11th day after the rendition of the court's decision and therefore it was "filed out of time and, therefore, ineffectual and a procedural nullity under Neb. Rev. Stat. § 25-1143 (Reissue

1989). Plaintiff's motion for new trial must be and is hereby overruled." The court also denied the defendants' application for attorney fees in the order of December 7. Sinn perfected an appeal to this court within 30 days of December 7.

### IS SINN'S APPEAL TIMELY?

This court previously overruled, without opinion or explanation, a motion by the defendants for summary dismissal made on the basis that we lack jurisdiction because of the alleged failure of Sinn to timely perfect an appeal. The defendants renew the argument that the motion for new trial was filed out of time, making the notice of appeal filed January 5, 1993, untimely, which would mean that this court was without jurisdiction.

■ Clearly, the discrepancies between pronouncements from the bench, signed but not filed orders, and filed orders which infect this case are unfortunate. Nonetheless, we conclude that "rendition" of judgment is the key to the jurisdictional issue. The clock begins ticking for appeal purposes after there has been "rendition" of a final judgment, and the appeal must be filed within 30 days thereof, unless a motion for new trial, filed within 10 days of the rendition of the judgment, interrupts the running of the 30 days. Neb. Rev. Stat. § 25-1912 (Cum. Supp. 1992).

■ On August 31, 1992, there was an oral pronouncement from the district court sustaining the demurrer and dismissing the petition with prejudice. However, the mere oral pronouncement of a judgment without an entry on the trial docket is not the rendition of judgment, *Fritsch v. Fritsch*, 191 Neb. 29, 213 N.W.2d 445 (1973), and thus does not set the clock for appeals. There is no trial docket in this record, but it has been held that, in the absence of a trial docket notation, judgment is rendered when some written notation is made and filed in the records of the court which becomes the equivalent of the notation on the trial docket. *In re Interest of J.A.*, 244 Neb. 919, 510 N.W.2d 68 (1994); *Schmuecker Bros. Implement v. Sobotka*, 217 Neb. 114, 348 N.W.2d 130 (1984). The written but unfiled "Judge's Notes" of August 31 and a pronouncement from the bench on that date were insufficient to constitute

rendition of judgment. However, on September 2, 1992, there was a written and filed order. The written order of September 2 was consistent with the oral pronouncement of August 31 in that the dismissal was with prejudice.

We hold that judgment was not rendered in this case until September 2, and thus Sinn's motion for new trial filed on September 11 was timely. Therefore, the conclusion of the trial court that the motion for new trial was out of time is in error. The appeal was timely filed, and therefore we turn to Sinn's assignments of error.

## ASSIGNMENTS OF ERROR

Sinn alleges that the trial court erred in sustaining the demurrer for failure to state a cause of action and that the court erred in failing to allow him to file an amended petition.

## ANALYSIS

The Nebraska Supreme Court has recently set forth the "roadmap" for consideration of demurrers in *Hoiengs v. County of Adams*, 245 Neb. 877, 882, 516 N.W.2d 223, 230-31 (1994):

> In considering a demurrer, a court must assume that the pleaded facts, as distinguished from legal conclusions, are true as alleged and must give the pleading the benefit of any reasonable inference from the facts alleged, but cannot assume the existence of facts not alleged, make factual findings to aid the pleading, or consider evidence which might be adduced at trial. *DeVaux v. DeVaux, ante* p. 611, 514 N.W.2d 640 (1994); *Wheeler v. Nebraska State Bar Assn.*, 244 Neb. 786, 508 N.W.2d 917 (1993); *Schieffer v. Catholic Archdiocese of Omaha*, 244 Neb. 715, 508 N.W.2d 907 (1993).
>
> A statement of facts sufficient to constitute a cause of action means a narrative of the events, acts, and things done or omitted which shows a legal liability of the defendant to the plaintiff. *Wheeler, supra; Schieffer, supra*.
>
> In ruling on a demurrer, the petition is to be construed liberally; if as so construed the petition states a cause of action, a demurrer based on the failure to state a cause of

action is to be overruled. See, *Wheeler, supra*; *St. Paul Fire & Marine Ins. Co. v. Touche Ross & Co.*, 244 Neb. 408, 507 N.W.2d 275 (1993).

Although the third amended petition is inartfully drawn, short on facts, and replete with conclusions, we nonetheless believe that we can discern therein four different matters which we consider on the question of whether Sinn has stated a cause of action. They are (1) that there was a taking without due process in violation of the 14th Amendment to the U.S. Constitution of the raise which Sinn had been granted; (2) that the defendants abridged Sinn's right to freely associate and express himself (in the context of his filing with coemployees the action before the CIR) by withdrawing his previously granted raise as retaliation; (3) that there is a cause of action under § 20-148 because the defendants took Sinn's raise without a hearing in retaliation for the exercise of his rights of association and free expression in the context of his grievance and CIR filings; and (4) that the defendants violated the employee handbook provisions concerning grievance procedures by failing to give Sinn a hearing on his grievance protesting the taking of his raise, which constituted a breach of contract, as did the failure to receive the raise.

Sinn's third amended petition prays for a finding of a violation of the civil rights guaranteed to him, as well as for damages, including punitive damages under 42 U.S.C. § 1983; for attorney fees under 42 U.S.C. § 1988; "and for such other and further relief as the Court deems just and equitable."

*Taking Without Due Process.*

The property which has been allegedly "taken" in this case is a raise in pay. However, Sinn does not allege that he actually had started receiving this raise. We read his allegations to be that he would have started receiving the raise but for the salary freeze for waste water and water department employees. The third amended petition does not allege a starting date for the raise and a freeze date thereafter. We also observe that the allegations of plaintiff's third amended petition are not specific with respect to the contents of his November 30, 1989, grievance. Sinn alleges that his grievance filed January 22, 1991, contested

the "taking of his money," presumably referencing the salary freeze.

The 14th Amendment to the U.S. Constitution prohibits the taking of property without due process. With respect to employment, there is a protected property interest in employment when the employee has a legitimate claim of entitlement to continued employment. *Irby v. Sullivan*, 737 F.2d 1418 (5th Cir. 1984). See, also, *Johnston v. Panhandle Cooperative Assn.*, 225 Neb. 732, 408 N.W.2d 261 (1987) (holding that for due process purposes under Neb. Const. art. 1, § 3, an at-will employee has no reasonable expectation of continued employment, or legitimate claim of entitlement to it and thus has no property interest). However, the instant case does not involve the termination of employment, but merely the denial of Sinn's expectation of a pay raise, which is clearly less significant than the loss of a job. The question is whether such an expectation is a property interest protected by the 14th Amendment. We bear in mind that the U.S. Supreme Court has stated that the federal courts are "not an appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies." *Bishop v. Wood*, 426 U.S. 341, 349, 96 S. Ct. 2074, 48 L. Ed. 2d 684 (1976).

In *Brown v. Brienen*, 722 F.2d 360 (7th Cir. 1983), a sheriff announced, pursuant to a local ordinance, that his deputies who worked overtime would be able to take off compensatory time. However, the "comp time" accrued faster than the sheriff could allow it to be taken without endangering public safety, as the county board failed to appropriate money to hire additional deputies. The deputies contended that they had a property right in the "comp time" once they had put in overtime. The circuit court stated several times that it "doubted" that there was a property interest involved. The court rejected the deputies' claim that they were entitled to a predeprivation hearing and noted that they could obtain the same relief in a state court breach-of-contract suit. The deputies' constitutional claim was turned away with the reasoning that "it may even be doubted whether any deprivation in the constitutional sense has yet occurred, or will occur unless and until the state courts turn down a meritorious contract claim." *Id.* at 366. The court in

*Brienen* stated: "But the Constitution must not be trivialized by being dragged into every personnel dispute in state and local government. Disputes over overtime, over work assignments, over lunch and coffee breaks do not implicate the great objects of the Fourteenth Amendment." 722 F.2d at 365.

■ Sinn's counsel has cited no case to us where there has been a finding of a taking in a constitutional sense when a public employee did not receive a future raise he expected, or was promised, as is allegedly the case here. We have not found any case where the denial of an expected raise was successfully litigated as a constitutional deprivation under 42 U.S.C. § 1983.

In *New York City Managerial Employees Ass'n v. Dinkins*, 807 F. Supp. 958, 973 (S.D.N.Y. 1992), an action contesting, on constitutional grounds, salary cuts and freezes imposed on city employees by a mayoral order, the court summarily rejected the plaintiffs' due process claims, saying:

> Simply put, there is no due process violation because plaintiffs and other managers have no legitimate claim of entitlement to a particular salary increase, and because, in any event, defendants' salary actions constitute a type of legislative classification that the courts consistently have held does not give rise to a due process violation.

A salary differential granted to Virginia State Police officers in one of seven geographic regions in the state was alleged to be a denial of due process and the basis for a claim under 42 U.S.C. § 1983 for those not receiving the differential in *Eldridge v. Bouchard*, 645 F. Supp. 749 (W.D. Va. 1986). The court grounded its rejection of the due process claim on the lack of an "existing entitlement" of the plaintiffs to receive the differential, characterizing it as only a "desire to receive it." *Id.* at 756-57. The *Eldridge* court cited *Board of Regents v. Roth*, 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972), for the principle that due process protection is accorded to already acquired and existing specific benefits. In the case at bar, the third amended petition alleges only that the city budgeted a raise for a coming fiscal year which was frozen when litigation costs, allegedly due to the CIR litigation, left the City of Seward with "insufficient funds this Fiscal year with which to provide

pay increases to Wastewater and Water employees," quoting from the city administrator's memorandum of January 25, 1991, which is appended to Sinn's third amended petition.

By analogy, we have also looked at cases involving physicians where the denial of hospital privileges, alleged to impact earnings, is alleged as an unconstitutional taking. However, it has been held that the expected economic value of staff privileges does not create a property interest in those staff privileges. See, *Todorov v. DCH Healthcare Authority*, 921 F.2d 1438 (11th Cir. 1991); *Faucher v. Rodziewicz*, 891 F.2d 864 (11th Cir. 1990).

Of similar import is *Dorfmont v. Brown*, 913 F.2d 1399 (9th Cir. 1990), holding that there is no protected property interest in a security clearance enabling one to work at a government job or a private industry job requiring such clearance. See, also, *Board of Regents v. Roth, supra* (holding that in order to have a constitutionally protected property interest in a government benefit, a person must have a legitimate claim of entitlement to it, not just an abstract need or desire for it, or a unilateral expectation of it). However, we bear in mind that *Roth* is a case involving the termination of employment itself, not merely a dispute over pay or working conditions.

Under the facts alleged here, we find that Sinn has not alleged a property interest in the expected raise so as to generate 14th Amendment due process protections.

*Freedom of Association and Speech.*

In the third amended petition, Sinn alleges that the actions of the defendants "prohibit," "discourage," "curtail," and "chill" his right to "organize and associate with other employees . . . for the purpose of expressing his views regarding city policy and thus takes away and prohibits plaintiff's constitutional right to associate and to express himself." Other than the denial of the raise, there are no factual allegations raising First Amendment concerns which satisfy the factual specificity requirement of *Hoiengs v. County of Adams*, 245 Neb. 877, 516 N.W.2d 223 (1994). Accordingly, we deal only with Sinn's claim of denial of his rights of association and free speech in the context of his actions allegedly taken to remedy

the denial of his raise.

We begin our analysis with *Connick v. Myers*, 461 U.S. 138, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983). Myers was an at-will employee working as an assistant district attorney in New Orleans on the staff of Harry Connick, the district attorney for Orleans Parish. Myers was informed that she would be transferred to prosecute cases in a different section of the criminal court, but she was strongly opposed to the proposed transfer, a view she expressed to her supervisors, including Connick. In the course of discussing her opposition to the transfer with one of her supervisors, a number of other office matters were discussed, but her transfer remained in effect. Myers then prepared a questionnaire soliciting the views of other staff members on office transfer policy, office morale, the need for a grievance committee, the level of competence of the supervisors, and whether employees were pressured to work in political campaigns. After preparing the questionnaire, Myers met with Connick, who urged her to accept the transfer, and she said she would "consider" it. Myers then distributed her questionnaire to 15 assistant district attorneys, and when Connick was informed of her actions, he terminated her employment because of her refusal to accept the transfer. Connick also told Myers that her distribution of the questionnaire was considered an act of insubordination. Myers filed suit under 42 U.S.C. § 1983 contending that her employment was wrongfully terminated in retaliation for the exercise of her constitutionally protected right of free speech.

The trial court agreed and ordered Myers reinstated. The court found that Myers was fired because of the questionnaire and that Connick had not clearly demonstrated that the questionnaire "substantially interfered with the operations of the District Attorney's office." 461 U.S. at 142. The Supreme Court granted certiorari and began its analysis by quoting from *Pickering v. Board of Education*, 391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968), stating that the Court's task was to seek "a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." 461 U.S. at

140. The Supreme Court disagreed with the lower court's conclusion that the issues presented in the questionnaire related to the effective functioning of the district attorney's office and therefore were matters of public importance and concern.

The *Connick* Court stated that the emphasis in *Pickering*, a case dealing with a high school teacher's public criticism of the board of education for its allocation of school funds between athletics and education, was upon a citizen's right of comment upon matters of public concern and that the decision "reflects both the historical evolvement of the rights of public employees, and the common-sense realization that government offices could not function if every employment decision became a constitutional matter." 461 U.S. at 143. The Court in *Connick* reminded the reader that it has frequently reaffirmed that speech on public issues occupies "the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." 461 U.S. at 145.

We believe the following holding from *Connick* provides the necessary standard for determination of whether Sinn's claims concerning abridgment of First Amendment rights of freedom of association and speech are demurrable:

> *Pickering*, its antecedents, and its progeny lead us to conclude that if Myers' questionnaire cannot be fairly characterized as constituting speech on a matter of public concern, it is unnecessary for us to scrutinize the reasons for her discharge. When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment. Perhaps the government employer's dismissal of the worker may not be fair, but ordinary dismissals from government service which violate no fixed tenure or applicable statute or regulation are not subject to judicial review even if the reasons for the dismissal are alleged to be mistaken or unreasonable. *Board of Regents v. Roth*, 408 U.S. 564 (1972); *Perry v. Sindermann, supra*; *Bishop v. Wood*, 426 U.S. 341, 349-350 (1976).

461 U.S. at 146-47.

Thus, the question in the case at bar is whether the raise of Sinn and his coworkers is a matter of "public concern" so that the grievances filing and the filing of an action before the CIR are protected to the extent that the City of Seward could not lawfully rescind the raise without running afoul of the First Amendment. Sinn does allege that a matter of "public concern" was involved, but merely alleging it does not make it so. *Connick* states that whether an employee's speech addresses a matter of public concern must be determined by the context, form, and content of a given statement as revealed by the whole record.

■ Although Sinn's factual allegations are "thin" at best, we take them to be that he spoke out against the revocation of the raise by filing the grievance of January 22, 1991, as well as the CIR petition; that he associated with others of like mind; and that for these actions, he lost his raise. However, we are of the view that the amount of pay to be received by Sinn, the hours he works, and his job classification are matters of *private concern* between him and the City of Seward and are not subject to judicial intervention, at least in the guise of the First Amendment.

In *Hoffman v. Mayor, Councilmen & Citizens of Liberty*, 905 F.2d 229 (8th Cir. 1990), a former police detective brought a 42 U.S.C. § 1983 action because he had been rehired to a lower position after a successful grievance filing which voided his firing. When hired back as a result of the grievance review board's mandate, he was placed as a property control officer, was no longer eligible for pay increases, could not work overtime, was not permitted to wear the uniform of an officer, and was even advised that he need not attend monthly police department meetings. The plaintiff in *Hoffman* premised his claim on the ground that his diminished status upon rehiring was in retaliation for his grievance filing and that as a result, his First Amendment rights of speech and petition were violated. In *Hoffman*, the Eighth Circuit Court of Appeals set forth a convenient framework for the analysis of First Amendment concerns in discharge cases:

1) did the employee show that he or she did something

which was speech touching upon public concern thereby making it protected activity; 2) if yes, did the employee then show that the protected activity was a substantial or motivating factor in the employer's action against the employee; and 3) did the employer show that it would have taken the same action absent the protected activity?
905 F.2d at 233.

The Eighth Circuit relied upon *Connick v. Myers*, 461 U.S. 138, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983), for the threshold test as to whether Hoffman's grievance touched upon a matter of public concern and found that it did not, as his dismissal, rehiring, and placement were wholly personal. The court recited that Hoffman did not raise issues of favoritism, corruption, or misfeasance in which there might be said to be a general public interest. The court also rejected Hoffman's claim that the very act of his filing a grievance over his discharge was a matter of public concern. Hoffman argued that the treatment he received after his successful grievance would chill the rights of others to file grievances. The court rejected the superficial appeal of that argument, reasoning that with or without a grievance procedure, Hoffman could have engaged in conduct which touched a matter of public concern for which he could not be rebuked by the city. However, Hoffman did not do so. The court concluded by stating, "The conduct on which he attempts to make a first amendment claim is only a personal grievance filing in which the public had no interest. Hoffman raised only his own concerns; that he did so in a formal grievance filing does not transmute his concerns into public concerns." 905 F.2d at 234.

Here, review of Sinn's CIR petition, which is attached to the third amended petition, reveals only an employee's disgruntlement with the results of a comparability study which the City of Seward used to make classifications of employees and set wages, hours, and conditions. The CIR petition, filed July 31, 1990, also complains of inadequate compensation in the past for Sinn and his similarly situated coworkers. This petition was dismissed because of the lack of an industrial dispute. Jurisdiction of the CIR is over industrial disputes; it has no authority to adjudicate constitutional rights or hear

cases involving breaches of contract. *Nebraska Pub. Emp. v. City of Omaha*, 235 Neb. 768, 457 N.W.2d 429 (1990).

The premise of Sinn's third amended petition is a claim for damages because his constitutional rights under the First Amendment of speech and assembly have been violated. The matter of his wages, job classification, and hours seems to us to be uniquely a private concern between Sinn and his employer. The petition alleges absolutely nothing which would make this of public concern, which is the requirement from *Connick v. Myers, supra*, before the protections of the First Amendment are implicated. This is true whether we consider Sinn's actions to be speech, assembly, petition, or some combination thereof.

We are unable to distinguish the instant case in any meaningful sense from *Crain v. St. Louis Board of Police Commissioners*, 920 F.2d 1402, 1411 (8th Cir. 1990), where the Eighth Circuit found that a police officer's complaints concerning the police board's sick-leave policy "were merely personal grievances attacking internal departmental policy and accordingly did not involve protected speech." In *Crain*, the employee had argued that his criticisms involved matters of significance to his family and all relatives of police officers. The court rejected this argument, saying:

> Although this may be true, it does not serve to convert his personal grievances into a matter of public concern. Any management decision, e.g., a size of a salary increase or the number of company holidays, affects the employees and their families; this is decidedly not the proper test for determining what speech implicates a matter of public concern.

*Id.* Sinn's third amended petition alleges no cause of action arising under the First Amendment.

### § 20-148 Remedies.

A portion of Sinn's third amended petition, designated as "Count Three," alleges that the individual defendants have denied his constitutional rights under § 20-148 by taking "his money without notice or hearing contrary to the Constitution of the State of Nebraska Article I Section 3, and the U.S. Constitution." He also alleges within this "count" that the

defendants have violated his right of association under the 1st and 14th Amendments by taking his salary as retaliation for the exercise of his rights. Having dealt with the First Amendment claims, we now deal with the allegations in the third amended petition as premised on § 20-148. That statute provides in relevant part:

> Any person or company, as defined in section 49-801, except any political subdivision, who subjects or causes to be subjected any citizen of this state or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the United States Constitution or the Constitution and laws of the State of Nebraska, shall be liable to such injured person in a civil action or other proper proceeding for redress brought by such injured person.

The plain language of the statute excludes political subdivisions from its operation, and thus, the trial court's ruling on "Count Three" as to the city is obviously correct. The demurrer was also sustained as to "Count Three" with respect to the individual defendants and the estate of Welsh. The Nebraska Supreme Court has discussed this statute and narrowed the scope of the statute from what might appear from the statutory language. *Wiseman v. Keller*, 218 Neb. 717, 358 N.W.2d 768 (1984), involved a certified question from the federal court as to whether the state had waived its sovereign immunity for actions brought in federal court under 42 U.S.C. § 1983 to protect rights under the contract clause (article I, § 10, of the U.S. Constitution) and property interests protected under the 14th Amendment. The court held that § 20-148 did not waive the sovereign immunity of the State of Nebraska as to actions brought in federal court under 42 U.S.C. § 1983 to protect rights under the contract clause and property interests protected under the 14th Amendment.

In *Wiseman*, the Supreme Court discussed the legislative history of § 20-148, stating:

> The legislative history of § 20-148 indicates that the major focus of the statute was to wipe out private acts of discrimination by private employers, thus excluding the state. Judiciary Committee Hearing, L.B. 66, 85th Leg.,

1st Sess. (Jan. 18, 1977).

Further support for this conclusion is found in other statutes passed by the Nebraska Legislature which specifically provide the state is subject to suit only under certain circumstances. See, e.g., Neb. Rev. Stat. §§ 24-319 (Reissue 1979), 25-1012.01 (Cum. Supp. 1984), 81-8,209 (Reissue 1981), 48-1126 (Supp. 1983), and 48-1227.01 (Supp. 1983).

218 Neb. at 721, 358 N.W.2d at 771.

■ Although we read *Wiseman* to suggest that the sweep of § 20-148 is limited to private acts of discrimination, presumably of a constitutional dimension, by private employers, the Eighth Circuit Court of Appeals has gone further in *Ritchie v. Walker Mfg. Co.*, 963 F.2d 1119 (8th Cir. 1992), a case involving a suit by employees alleging that their termination for failing drug tests violated their employment contracts, as well as state and federal constitutional and statutory provisions. The plaintiffs in *Ritchie* alleged a cause of action against their private employer using § 20-148. The circuit court agreed with the district court's conclusion that § 20-148 did not apply to drug testing by private employers for several reasons:

[P]erhaps most importantly, the statute's legislative history indicates that its purpose was limited. Summarizing Section 20-148, its sponsor explained that "[t]he bill is designed to allow people who have complaints of discrimination to go into court rather than being compelled to go only through the Equal Opportunity Commission." Floor Debate, L.B. 66, Judiciary Committee, 86th Leg. 1st Sess. 434-35 (Feb. 11, 1977). Thus, the intent of section 20-148 is to allow plaintiffs to bypass the time-consuming administrative procedures of the Equal Employment Opportunity Commission. This legislative history demonstrates that the statute does not sweep as far as it first appears. Indeed, section 20-148 merely usurps the jurisdiction of the EEOC, which by statute already entertains claims charging private discrimination. Conversely, no analogous state or federal statute reaches the private search and seizure involved here.

963 F.2d at 1122-23.

"Count Three" of Sinn's third amended petition does not allege a private act of discrimination by a private employer. Instead, it alleges the revocation of a raise by individuals acting in their capacities as public officials. There are no allegations of facts in "Count Three" stating a cause of action under § 20-148. The district court did not err in sustaining the demurrer as to "Count Three."

*Breach of Contract and Grievance Procedure.*

"Count Four" of the third amended petition contains an allegation at paragraph 50 as follows: "That the plaintiff further states that the actions of the defendants by taking his salary and denying him a hearing violates his contractual rights and constitute a breach of that agreement." We assume that the contract being referenced is the one to allegedly receive a pay raise of $1,086 per year. Neb. Rev. Stat. § 16-726 (Reissue 1991) sets forth the procedure for presentation of liquidated and unliquidated claims against a city of the first class and contains therein the provision that for other than a tort claim, "the claimant shall file such claim within 90 days of the accrual of the claim in the office of the city clerk." There is no allegation in the third amended petition that Sinn filed his claim or grievance concerning the raise with the city clerk of the City of Seward. It is only claimed in paragraphs 12, 13, 17, and 46 of the third amended petition that he "filed a grievance."

The statutory scheme for filing claims against a city of the first class like Seward is set forth in § 16-726, and a subsequent appeal to the district court is provided for in Neb. Rev. Stat. § 16-727 (Reissue 1991). Although these statutes have not been construed in the context presented by this litigation, virtually identical statutes for cities of the primary class were discussed in a relevant context in *Andrews v. City of Lincoln*, 224 Neb. 748, 401 N.W.2d 467 (1987). In *Andrews*, the city employee filed suit for loss of employment, loss of wages, humiliation, and embarrassment because the city had failed to perform its contract of employment. The district court's judgment in favor of the employee was reversed by the Supreme Court, which found that the city employee's failure to file his contract claim

with the city clerk deprived the district court of the power to decide whether the claim was meritorious. The Supreme Court held that Neb. Rev. Stat. § 15-840 (Reissue 1991) prescribes a "procedural prerequisite concerning contract claims, liquidated or unliquidated, against a city of the primary class." 224 Neb. at 751, 401 N.W.2d at 469. Since that prerequisite had not been followed, the district court lacked jurisdiction, that is, the power to adjudicate the merits of Andrews' claim. See, also, *Bolan v. Boyle*, 222 Neb. 826, 387 N.W.2d 690 (1986) (identical holding for a city of the metropolitan class).

In *Jackson v. County of Douglas*, 223 Neb. 65, 388 N.W.2d 64 (1986), county employees sued the county to recover compensation for a 15-minute unpaid period for which they were required to report prior to work for purposes of conferring with workers on the preceding shift. The trial court sustained a demurrer on the ground that the court lacked subject matter jurisdiction. The Supreme Court affirmed, finding that the failure to comply with Neb. Rev. Stat. § 23-135 (Reissue 1987) (the claim statute against counties) rendered the petition subject to demurrer unless there was some other basis for jurisdiction, which was not found in *Jackson*.

The law is firmly established that after a demurrer is sustained, an opportunity to amend the petition should be given unless there is no reasonable possibility that the plaintiff will, by amendment, be able to state a cause of action. *Wichman v. Naylor*, 241 Neb. 249, 487 N.W.2d 291 (1992). However, in the case at hand, the requirement of § 16-726 that the claim be filed within 90 days of accrual operates as a statute of limitations. See *Thompson v. City of Omaha*, 235 Neb. 346, 455 N.W.2d 538 (1990) (holding that a statute requiring that claims against a city of the metropolitan class be filed with comptroller within 18 months operated as a statute of limitations). In the present case, the grievance filed by Sinn on November 30, 1989, concerning regular pay, referenced in paragraph 12 of the third amended petition, and the decision to freeze wages as communicated to Sinn by the city administrator on January 25, 1991, as alleged in paragraph 24 of the third amended petition, reveal that Sinn's claim in those respects is now time barred.

Sinn seeks to claim wages for an unspecified time period

prior to his first grievance of November 30, 1989, which is obviously barred. Paragraph 46 of the third amended petition alleges that "on January 22, 1991, the plaintiff filed a grievance contesting the taking of his money." To avoid the demurrer, Sinn was bound to allege filing with the city clerk within 90 days of accrual of the claim. He has alleged neither, and due to the passage of time, there is no possibility that he can now properly file a contract claim against the city under § 16-726 for his wage claims for 1989, 1990, or 1991. Accordingly, the district court properly sustained the demurrer to Sinn's claim for breach of contract.

*Handbook and Grievance Procedure.*

"Count Four" of the third amended petition alleges that the City violated specific ordinances which allegedly accord Sinn a hearing on his grievances before the Finance, Audit, Budget, and Personnel Committee or a hearing before the full city council. The consequence of such denial is alleged to be that it "violated his constitutional rights" and constitutes "a breach of that agreement." We believe that "Count Four" fails to state a cause of action. It raises no new matters concerning Sinn's constitutional rights which we have not already discussed. We have already found the absence of a property interest in the raises, as well as an adequate postdeprivation state remedy, which was not followed. We find that the trial court properly sustained the demurrer to "Count Four."

## CONCLUSION

The trial court properly sustained the demurrer to the third amended petition and dismissed the case, as there was no reasonable possibility that Sinn could amend and cure the defects we have set forth herein.

AFFIRMED.