**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (# 28) be and hereby is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's Cross Motion for Summary Judgment (# 30) be and hereby is **DENIED.**

**IT IS FINALLY ORDERED** that Defendants' counterclaim (# 25) is moot.

Gerald BIBY, Plaintiff,

v.

**BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA AT LINCOLN, Darrell W. Nelson, Donald Helmuth, Richard Wood, Ken Cauble, and John Does 1–8 in Their Individual Capacities, Defendants.**

No. 4:03CV3206.

United States District Court, D. Nebraska.

Oct. 20, 2004.

**1032**

Mary C. Gaines, Ballew, Schneider Law Firm, Lincoln, NE, for Plaintiff.

Terry C. Dougherty, Woods, Aitken Law Firm, John C. Wiltse, University of Nebraska, Lincoln, NE, for Defendants.

## MEMORANDUM AND ORDER

BATAILLON, District Judge.

### INTRODUCTION

Before the court is defendants' second motion for summary judgment, Filing No. 81.[1] The motion is supported by briefs, Filing Nos. 83 and 89, and indices of evidence, Filing Nos. 84 and 90. Plaintiff's second amended complaint alleges nine claims[2] against the University of Nebraska at Lincoln (the "University") and Darrell Nelson, Donald Helmuth, Richard Wood, Ken Cauble and Does 1-8 in their individual and official capacities, Filing No. 49.

On December 12, 2003, upon plaintiff's motion, the court dismissed claims one through five against the University and the individual defendants in their official capacities, Filing No. 30. Defendants Nelson and Helmuth filed a motion for summary judgment, Filing No. 17, seeking dismissal of claims one through five against them in their individual capacities on the basis of qualified immunity. In my Memorandum and Order dated September 29, 2004, I granted defendants' motion as to claims one, three, four, and five, but denied the motion as to claim two, Filing No. 110. Therefore, as of September 29, 2004, the remaining claims were claim two against defendants in their individual capacities and claims six through nine against both the University and the defendants in both their individual and official capacities.

In their second motion for summary judgment filed June 25, 2004, Filing No. 81, defendants now seek (1) dismissal of claims one through five against defendant Wood in his individual capacity on the basis of qualified immunity,[3] and (2) dismissal of claims six through nine, which are purely state law claims, against both

---

1. Defendants also move for a hearing on the motion for summary judgment. Filing No. 82. This motion is denied. *See* NECivR 7.1(d) and 56.1.

2. Plaintiff dismissed claim ten, Filing No. 91, subsequent to defendants' second motion for summary judgment.

3. For the reasons stated in my previous Memorandum and Order, Filing No. 100, claims one, three, four, and five are dismissed as to defendant Wood.

the University and the individual defendants on various substantive and procedural grounds. Specifically, the University contends that claims six through nine are barred by state sovereign immunity, the Eleventh Amendment, applicable statutes of limitation, and for plaintiff's failure to exhaust administrative remedies as to claims six and seven. The individual defendants allege that claims six through nine should be dismissed because the claims are barred by applicable statutes of limitation and because plaintiff has failed to state claims upon which relief can be granted.[4] Having reviewed the record, the parties' briefs, and the applicable law, the court concludes that defendants' second motion for summary judgment should be granted.

## FACTUAL BACKGROUND

The factual background is set forth in the court's Memorandum and Order dated September 29, 2004, Filing No. 110, and will not be reiterated this order, except to the extent such facts are relevant to the issues discussed herein. The University hired plaintiff in 1993 as a technical assistance coordinator. In July 1997, the University and Corn Card International entered into a licensing agreement which permitted Corn Card to use the technology that had been created by the plaintiff. A dispute arose between Corn Card and the University. The plaintiff believed that the University had breached its agreement with Corn Card and publicly stated so on several occasions. Ultimately, the University discharged the plaintiff. Plaintiff filed suit alleging a number of state and federal violations. Currently the lawsuit before me contains a First Amendment claim wherein plaintiff contends the University fired him because he expressed his beliefs

and opinions to the state ombudsman and to a state senator, and various state law claims.

## DISCUSSION

### A. Claim Two: 42 U.S.C. § 1983

Before turning to the motion at issue, however, the court finds it necessary to revisit claim two concerning plaintiff's 42 U.S.C. § 1983 claim for an alleged violation of his First Amendment right to free speech. In my Memorandum and Order dated September 29, 2004, I denied defendants' motion for summary judgment as to claim two finding that there was a genuine issue of fact as to whether plaintiff had stated a claim for a violation of his First Amendment right to free speech under 42 U.S.C. § 1983. It has come to the court's attention, however, for reasons explained below, that plaintiff cannot state a claim for relief under § 1983 against the defendants in their individual capacities.

 Pursuant to 42 U.S.C. § 1983, the law imposes civil liability on any person who "under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." An essential element in any § 1983 claim is that the conduct complained of must have been committed by a person acting under color of state law. *See DuBose v. Kelly,* 187 F.3d 999, 1002 (8th Cir.1999), *cert. denied,* 535 U.S. 1064, 122 S.Ct. 1932, 152 L.Ed.2d 838 (2002); *see also Kuha v. City of Minnetonka,* 365 F.3d 590, 606 (8th Cir.2003) ("essential elements of a 1983 claim are: (1) violation of a

***

4. Defendants also seek dismissal of claims four and five against the individual defendants in the second motion for summary judgment. Because these claims were dismissed in the court's Memorandum and Order dated September 29, 2004, I need not address them again in this Memorandum and Order.

constitutional right, (2) *committed by a state actor*, (3) who acted with the requisite culpability and causation to violate the constitutional right") (emphasis added). Thus, § 1983 authorizes suits against state officers for damages arising from official acts. *Haver v. Melo*, 502 U.S. 21, 24, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Moreover, state officers may be held personally liable for damages under § 1983 based on actions taken in their official capacities. *Id.*

■ On December 12, 2003, on plaintiff's own motion, Filing No. 25, the court dismissed claims one through five against the University and against the individual defendants in their official capacities. Filing No. 30. Accordingly, plaintiff's remaining claims assert deprivations of plaintiff's constitutional right to free speech by defendants in their individual capacities. Plaintiff cannot maintain an action for deprivation of his right to free speech against an individual. The First Amendment applies only to governmental restrictions on speech. The First Amendment's Free Speech Clause states that "Congress shall make no law . . . abridging the freedom of speech. . . ." U.S. Const. amend. I. The First Amendment right to free speech is among the fundamental personal rights and liberties which are protected by the Fourteenth Amendment from invasion by the states. *Lovell v. City of Griffin*, 303 U.S. 444, 449, 58 S.Ct. 666, 82 L.Ed. 949 (1938). The First Amendment is also applicable to the political subdivisions of the states. *See id.* at 450, 58 S.Ct. 666. However, "the First Amendment, the terms of which apply to governmental action, ordinarily does not itself throw into constitutional doubt the decisions of private citizens to permit, or to restrict, speech." *Denver Area Educ. Telecom. Consortium, Inc. v. F.C.C.*, 518 U.S. 727, 737, 116 S.Ct. 2374, 135 L.Ed.2d 888 (1996) (interpreting provision permitting a cable operator to prohibit patently offensive programming). Because plaintiff abandoned his action against defendants in their official capacities, he cannot maintain an action against these individuals for actions taken outside their official capacities.

Accordingly, the court now modifies its September 29, 2004, order to grant defendants' motion for summary judgment as to claim two.

### B. Claim Six: The Nebraska State Government Effectiveness Act

Plaintiff contends that the actions of the University and the individual defendants, in both their individual and official capacities, constituted a violation of the Nebraska State Government Effectiveness Act (the "Whistleblower Act"), Neb.Rev.Stat. § 81–2701 *et seq.* Specifically, plaintiff contends that defendants "recommended, approved, directed and otherwise took personnel action against plaintiff because he disclosed the defendants' wrongdoing to the University Ombudsman, the State Ombudsman, and a Nebraska Senator." Second Amended Complaint at 7. The defendant University and the individual defendants in both their individual and official capacities raise several arguments in response. However, I believe the failure to exhaust by plaintiff is dispositive of this issue.

### Failure to Exhaust Administrative Remedies

Defendants argue that this claim should be dismissed against the University and the defendants in both their official and individual capacities because plaintiff failed to exhaust his administrative remedies under the Whistleblower Act.

The Whistleblower Act prohibits any person who has authority to recommend, approve, direct, or otherwise take personnel action to take any personnel action against an employee (1) because of the

disclosure of information by the employee to the public counsel or an official which the employee reasonably believes evidences wrongdoing; (2) as a reprisal for the submission of an allegation of wrongdoing or a violation of this section to the public counsel or official by such employee; or (3) as a reprisal for providing information or testimony, pursuant to an investigation or hearing held under the State Government Effectiveness Act, to the public counsel, an official, the state personnel board, a corresponding personnel appeals board, or the director or chief operating officer of an agency. Neb.Rev.Stat. § 81–2705. If an employee notifies the public counsel of an alleged violation of § 81–2705, the public counsel conducts an investigation to determine whether there are grounds to believe that a violation has occurred or is about to occur. Neb.Rev. Stat. § 81–2706. If the public counsel believes by a preponderance of the evidence that a violation of § 81–2705 has occurred, the public counsel transmits this finding to the governor and to either the state personnel board or the personnel appeals board of the employee's agency. *Id.* The employee then has an opportunity to request a hearing and be represented by counsel at the hearing. § 81–2707. Pursuant to § 81–2707(3), an employee aggrieved by the decision of the personnel board, may appeal the decision in accordance with Nebraska's Administrative Procedures Act (APA).

Pursuant to Neb.Rev.Stat. § 84–917, any person aggrieved by a final agency decision is entitled to judicial review under the APA. Moreover, except as otherwise provided by law, the APA establishes the exclusive means of judicial review of a final decision of any agency in a contested case. Neb.Rev.Stat. § 84–919. To seek review, a person must file a petition in the district court of the county where the action is taken within *thirty* days after the service of the final decision of the agency. Neb. Rev.Stat. § 84–917 (emphasis added).

■ Plaintiff has made no showing that he has complied with the administrative review requirements of the APA. In response to defendants' motion for summary judgment as to this issue, plaintiff contends that his action is timely because this suit is "his initial action under the act [the APA] and it is therefore not time barred." Pl. Brief in Opposition at 6. Plaintiff's employment was terminated on November 12, 1999. Plaintiff then instituted a grievance protest with the denial of his final grievance occurring on June 9, 2000. Therefore, for his claim to be timely under the APA, plaintiff had to file suit in the district court of the county where the action was taken by July 9, 2000, at the latest. Because plaintiff did not file suit until June 2, 2003, his claim under the Whistleblower Act must be dismissed.

The claim is dismissed against the University and the defendants in both their official and individual capacities for plaintiff's failure to comply with the filing requirements of the APA.

### C. Claim Seven: Neb.Rev.Stat. § 20–148

Plaintiff contends that the actions of the University and the individual defendants, in both their individual and official capacities, constituted a violation of Neb.Rev. Stat. § 20–148. Specifically, plaintiff alleges that defendants "deprived Plaintiff of his right to privacy, his right to free speech, his right not to be conspired against for acting in the course of justice, his right to report wrongdoing to the proper authorities and his right not to be subject to reprisal for reporting wrongdoing." Second Amended Complaint at 7.

The University and the defendants in both their official and individual capacities allege that plaintiff is unable to state a

claim against them under this statute because § 20–148 does not permit suits against the state. The court agrees.

■ Section 20–148 provides in relevant part:

Any person or company, as defined in section 49–801, *except any political subdivision*, who subjects or causes to be subjected any citizen of this state or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the United States Constitution or the Constitution and laws of the State of Nebraska, shall be liable to such injured person in a civil action or other proper proceeding for redress brought by such injured person. (Emphasis added.)

Consistent with the plain language of the statute, prior courts have held that § 20–148 is limited only to private acts of discrimination by private employers. *See Sinn v. City of Seward*, 3 Neb.App. 59, 75, 523 N.W.2d 39, 49 (1994) (affirming trial court's determination that city cannot be sued under § 20–148); *Wiseman v. Keller*, 218 Neb. 717, 358 N.W.2d 768, 771 (1984) ("The legislative history of § 20–148 indicates that the major focus of the statute was to wipe out *private* acts of discrimination by *private* employers, *thus excluding the state*.") (emphasis added). Additionally, § 20–148 does not apply to individuals acting as public officers. *Buzek v. Pawnee Co.*, 207 F.Supp.2d 961, 965 (D.Neb.2002).

■ Moreover, even if this statute permitted suits against the state, the suit could only be brought in state court. *See Wiseman*, 358 N.W.2d at 772 (because § 20–148 "is silent as to allowing suit in federal court and the legislative history indicates it was intended as a state remedy, we conclude that even if the statute permitted suits against the state, that suit could only be brought in state court").

■ Plaintiff also alleges that the actions of the defendants in their individual

capacities constituted a violation of Neb. Rev.Stat. § 20–148. Because § 20–148 is a procedural statute that does not create substantive rights, *see Adkins v. Burlington Northern Santa Fe R. Co.*, 260 Neb. 156, 162, 615 N.W.2d 469, 474 (2000), the plaintiff must allege an underlying substantive right. In the present case, plaintiff has sued defendants under § 20–148 for alleged deprivations of his right to privacy and free speech under the United States Constitution and the Constitution and laws of the State of Nebraska. Second Amended Complaint at 7. However, because both the First and Fourteenth Amendments only protect a person against deprivation of rights by the state, plaintiff is unable to maintain an action against the defendants in their individual capacities. Defendants acted in their official capacities, and thus the complaint does not state a cause of action against them pursuant to § 20–148.

Accordingly, the court finds that plaintiff's claims against the University and the defendants in their official and individual capacities under Nev.Rev.Stat. § 20–148 must be dismissed.

### D. Claim Eight: Tortious Interference With a Business Relationship

■ Plaintiff contends that defendants unjustifiably acted to interfere with plaintiff's business relationship (ostensibly with Corn Card) causing the plaintiff loss of royalties due him as the owner of the technology under the Technology Licensing Agreement and University policy. Second Amended Complaint at 8. To state a claim for tortious interference with a business relationship or expectancy, the plaintiff must prove (1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the

part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted. *Macke v. Pierce,* 266 Neb. 9, 661 N.W.2d 313, 317 (2003).

Plaintiff cannot state a claim for tortious interference against the individual defendants in either their official or individual capacities, because there is no basis upon which a tortious interference claim can be asserted. First, the court previously dismissed plaintiff's 42 U.S.C. § 1983 claim for alleged royalties under the patent because of the untimely claim. Second, as discussed *infra,* the court is also dismissing plaintiff's breach of contract claim as being untimely. Additionally, under the Tort Claims Act, the statute of limitations for bringing a tort action against the state is two years after the claim accrued. Neb. Rev.Stat. § 81–8,210(4) (Reissue 2003). Plaintiff did not file his complaint within this two-year period of time. And finally, claims against the University officials are barred for tortious interference with contract claims, if allegations are pursuant to plaintiff's employment. Neb.Rev.Stat. § 81–8,219(4) (Reissue 2003). For all of the reasons set forth herein, claim eight must also be dismissed as to all defendants in both their official and individual capacities.

### E. Claim Nine: Breach of Contract

 Plaintiff contends that "[t]he University breached the contract with Corn Card, causing the loss of the royalties, and other economic benefits the Plaintiff would otherwise have received" as a third-party beneficiary. Second Amended Complaint at 8. Hence, the plaintiff only alleges his breach of contract claim against the University. Because the University is a state entity, any action for breach of contract against the University must have been brought within two years after the claim arose. Neb.Rev.Stat. § 25–218. Plaintiff's employment was terminated on No-

vember 12, 1999. Plaintiff then instituted a grievance protest with the denial of his final grievance occurring on June 9, 2000. Therefore, for his claim to be timely, plaintiff had to file suit by June 9, 2002, at the latest. It is undisputed, however, that plaintiff did not file suit until June 2, 2003, approximately one year beyond the statutory period. The court finds, therefore, that plaintiff's claim against the University is untimely under § 25–218. Accordingly, the court grants defendants' motion for summary judgment as to claim nine.

IT IS THEREFORE ORDERED:

1. Defendants' second motion for summary judgment, Filing No. 81, is granted;

2. The court amends its Memorandum and Order dated September 29, 2004, Filing No. 110, and dismisses claim two, which is the First Amendment claim;

3. This case is dismissed; and

4. A separate judgment will be issued.