HAROLD L. FREESE, APPELLEE, V.
THE COUNTY OF DOUGLAS, A COUNTY IN THE
STATE OF NEBRASKA, ET AL., APPELLEES,
THE DOUGLAS COUNTY SHERIFF'S
MERIT COMMISSION ET AL., APPELLANTS.
STEVE JOHNSON AND GARY BJORK, APPELLEES, V.
THE COUNTY OF DOUGLAS, A COUNTY IN THE
STATE OF NEBRASKA, ET AL., APPELLEES,
THE DOUGLAS COUNTY SHERIFF'S
MERIT COMMISSION ET AL., APPELLANTS.

315 N.W.2d 638

Filed February 5, 1982. Nos. 43828, 43829.

William T. Ginsburg of Zuber & Ginsburg for appellants.

Jerome A. Merwald for appellees.

Heard before KRIVOSHA, C.J., McCOWN, and HASTINGS, JJ., and FUHRMAN and CAPORALE, District Judges.

KRIVOSHA, C.J.

The several cases involved herein were consolidated for purposes of appeal before this court and will be considered as one. The appellants, The Douglas County Sheriff's Merit Commission for Douglas County and its individual members (the Commission), appeal from an order of the District Court for Douglas County, Nebraska, finding that the Commission exceeded its statutory authority when the Commission increased the penalties given by the sheriff of Douglas County against the various appellees. We believe that the trial court was correct in its interpretation, and affirm the judgment of the trial court.

The Douglas County Sheriff's Merit Commission is a body created pursuant to the provisions of Neb. Rev. Stat. § 23-1723 (Reissue 1977). Its purpose, as stated in the statute, is to carry out the provisions of Neb. Rev. Stat. §§ 23-1721 to 23-1737 (Reissue 1977), first adopted in 1969. The specific purpose for the act is set out in § 23-1721, which provides: "The purpose of sections 23-1721 to 23-1737 is to guarantee to all citizens a fair and equal opportunity for public service in the office of the county sheriff in counties having a population of forty thousand inhabitants or more, to establish conditions of service which will attract officers and employees of character and capacity, and to increase the efficiency of the county sheriff's office by the establishment of a merit system." It is clear from a reading of both the act itself and the legislative history prior to its enactment that the purpose of the bill was not to remove from the sheriff the right to discipline his personnel but, rather, to insulate deputy sheriffs in the designated counties from the hazards of politics which a career deputy sheriff might suffer each time a new sheriff was elected to office. The Commission is given specific powers and duties set out by statute (see § 23-1727), all of which are intended to provide a form of civil service to deputy sheriffs employed by the various counties.

The particular section of the statute raised by this appeal is § 23-1734, which reads as follows: "Any deputy sheriff may be removed, suspended, or reduced in either rank or grade or both rank and grade *by the sheriff*, after appointment or promotion is complete, by an order in writing, stating specifically the reasons therefor. Such order shall be filed with the commission and a copy thereof shall be furnished to the person so removed, suspended, or reduced. Any person so removed, suspended, or reduced in either rank or grade or both rank and grade may, within ten days after presentation to him of the order of removal, suspension, or reduction, appeal to the commission from such order. The commission shall, within two weeks from the filing of such appeal, hold a hearing thereon, and thereupon fully hear and determine the matter, and either *affirm, modify, or revoke* such order. The appellant shall be entitled to appear personally, produce evidence, and to have counsel and a public hearing. The finding and decision of the commission shall be certified to the sheriff, and shall forthwith be enforced and followed by him, but under no condition shall the employee who has appealed to the commission be permanently removed, suspended, or reduced in rank until such finding and decision of the commission shall be so certified to the sheriff." (Emphasis supplied.)

We think it of some significance and worth noting at this point that the section in question only becomes operative if a deputy sheriff is "removed, suspended, or reduced in either rank or grade or both rank and grade *by the sheriff*" and chooses to appeal. The act does not become operative until the sheriff acts. Furthermore, it does not apply if a promotion is granted, even though the employee might believe he should have received a greater promotion. Nor does it entitle any other deputy sheriff to appeal to the Commission if the deputy believes he has been aggrieved by reason of another deputy receiving a promotion which the former believes he should have received.

In the cases consolidated and now before us, each of

the appellees was employed as a deputy sheriff by the Douglas County sheriff's office on July 2, 1979, when an incident involving a female prisoner occurred. As a result of the incident, the sheriff, on July 9, 1979, suspended the appellee Harold L. Freese for a period of 15 calendar days and demoted him from the rank of captain to the rank of sergeant. Also, on the same date, the sheriff suspended the appellee Gary Bjork for a period of 5 calendar days and suspended the appellee Steve Johnson for a period of 15 calendar days, to thereafter be followed by termination. On the following day the sheriff rescinded his 15-day suspension and termination of Johnson and, instead, suspended him for a period of 5 calendar days. None of the suspended officers were directly involved with the female prisoner, but were reprimanded because they permitted the incident to occur.

Each of the appellees appealed the sheriff's disciplinary action to the Commission. Thereafter, hearings were held in accordance with statute, and on September 5, 1979, the Commission increased the sheriff's penalty imposed on Freese from a 15-day suspension and demotion to sergeant to a termination of employment. On the same day, the Commission increased the sheriff's suspension of Johnson from a 5-day suspension to a 20-day suspension and increased the suspension of Bjork from a 5-day suspension to a 10-day suspension. The three deputy sheriffs appealed the action of the Commission to the District Court for Douglas County, Nebraska, which found that a proper interpretation of the applicable laws did not grant the Commission the power to increase a penalty given by the sheriff to a deputy, but only to either affirm it, modify it by reducing it, or revoke it. The trial court therefore reversed the decision of the Commission and reinstated the prior orders of the sheriff with respect to all the deputy sheriffs.

The single issue presented to this court is whether the Commission's authority to modify the action of the

sheriff includes the power to increase as well as reduce the punishment imposed by the sheriff upon the various employees. While at first blush the answer may seem obvious and in the affirmative, further examination discloses that such is not the case. As an administrative body, the Commission is limited in its authority by the statutes granting to it its powers. *Slosburg v. City of Omaha*, 183 Neb. 839, 165 N.W.2d 90 (1969); *State, ex rel. Woolridge v. Morehead*, 100 Neb. 864, 161 N.W. 569 (1917). We must therefore attempt to determine from the statutes what the authority of the Commission is. That resolution in this case depends upon our interpretation of the word "modify" contained within § 23-1734.

Turning to a dictionary to find the meaning of the word "modify" proves, in this case, to be of little help. Black's Law Dictionary 905 (5th ed. 1979) defines modify as "To alter; to change in incidental or subordinate features; enlarge, extend; amend; limit, reduce." Relying, then, upon Black's definition, one would conclude that the word "modify" means either to increase or decrease. Webster's Third New International Dictionary, Unabridged (1968), however, defines modify as "to make more temperate and less extreme : lessen the severity of : MODERATE." Perhaps the best explanation of the problem is found in 58 C.J.S. *Modify* 840 (1948), where the author notes, "'Modify' is a transitive verb, having many meanings; it is a word general in use, with meanings that are not uncertain, but it must be interpreted in the light of the context in which it is used." We concur that in this case the word "modify" must be interpreted in light of the context in which it is used, to wit, § 23-1734.

Having reached the conclusion that the definition of the word "modify," as used in the questioned statute, is ambiguous, we are required to interpret its meaning. In doing so we are guided by certain statutory rules of construction which we have recently gathered and noted in *PPG Industries Canada Ltd. v. Kreuscher*, 204

Neb. 220, 227, 281 N.W.2d 762, 767 (1979), where we said: "Where the language used in a statute is ambiguous, recourse should be had to the legislative purposes." We further said in *PPG Industries* at 227-28, 281 N.W.2d at 767-68: "The reasons for the enactment of a statute and the purposes and objects of an act may be guides in an attempt to give effect to the main intent of lawmakers. . . . The court, in considering the meaning of its statute, should, if possible, discover the legislative intent from the language of the act and give it effect. [Citation omitted.] Where, because a statute is ambiguous, it is necessary to construe it, the principal objective is to determine the legislative intention. . . . A primary rule of construction is that the intention of the Legislature is to be found in the ordinary meaning of the words of a statute in the connection in which they are used and in light of the mischief to be remedied." With these guidelines in mind, then, we examine the act to attempt to determine the meaning of the word "modify" in light of the mischief sought to be remedied.

As we noted at the outset, an examination of the committee hearings and floor debate which resulted in the passage of the act for deputy sheriffs indicates that the act was intended to protect deputy sheriffs from arbitrary and capricious action of sheriffs and to protect career deputy sheriffs from the hazards they might otherwise experience when a new sheriff was elected. The act obviously was for the purpose of protecting deputy sheriffs and not for the purpose of removing from the sheriff the right to run his department or discipline his employees. We think it particularly significant that the act is only effective with regard to the removal, suspension, or reduction in rank or grade of a deputy sheriff, and may only be invoked by the affected employee. The legislative history and the language of § 23-1734 leads one to the conclusion that the act was intended to protect the employee and not to remove from the sheriff as employer the authority to

establish the maximum punishment for an employee by granting to an independent body separate and distinct disciplinary authority over deputy sheriffs. The authority granted to the Commission is to either "affirm, modify, or revoke such order." If revoking the order is the most that the Commission may do to aid an employee, contrary to the wishes of the sheriff, and affirm is the least it can do, it would appear to follow that the middle ground, "modify," must mean something between the most and the least. See, 2A Sutherland Statutory Construction § 47.16 (4th ed. 1973); *Lewis Realty v. Wisconsin R. E. Brokers' Board*, 6 Wis. 2d 99, 94 N.W.2d 238 (1959); *State v. Bauer*, 236 Iowa 1020, 20 N.W.2d 431 (1945). While it may have been possible for the Legislature to have granted to the Commission independent authority, it did not choose to do so. The Commission was intended to serve as aid to the deputy sheriff and not to place him in the difficult position of, on the one hand, giving him a right to appeal while, on the other hand, subjecting him to the possibility of even more severe punishment. We find nothing in the history of the act to indicate such intent on the part of the Legislature and believe that the trial court was correct in its interpretation. The Commission has no authority when modifying an act of the sheriff to increase the punishment imposed by the sheriff, but may modify the sheriff's action by reducing the extent of the punishment.

The statute, however, requires the Commission to either "affirm, modify, or revoke" the sheriff's order, and the order of the sheriff cannot be enforced *until* such finding and decision of the Commission is certified to the sheriff. We believe, therefore, that this matter should have been remanded to the Commission by the trial court with directions to affirm, modify, or revoke the sheriff's order, limited, however, by what we have now said with regard to the extent the Commission may modify the order. Accordingly, then, the judgment of the trial court is affirmed, except to the extent that

the trial court should order these matters returned to the Commission with instructions that it must affirm, modify, or revoke the sheriff's order and, upon doing so, certify the same to the sheriff.

AFFIRMED AS MODIFIED.