SHARON BLAIR, APPELLANT, V. PHYSICIANS MUTUAL INSURANCE
COMPANY, APPELLEE.
496 N.W.2d 483

Filed March 5, 1993.    No. S-90-733.

Lowell R. Johnson and Dennis E. Martin, of Martin & Martin, P.C., for appellant.

Terrence D. O'Hare and J. Scott Paul, of McGrath, North, Mullin & Kratz, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

SHANAHAN, J.

Sharon Blair brought a contract action against Physicians Mutual Insurance Company (PMI), claiming that PMI had breached its employment contract with Blair. After a verdict for PMI, Blair appealed to this court.

### STANDARD OF REVIEW

"A verdict in a civil case will be upheld on appeal unless a jury's finding, necessary for the verdict, is clearly erroneous." *Williams v. Monarch Transp.*, 238 Neb. 354, 357, 470 N.W.2d 751, 754 (1991).

In reviewing sufficiency of evidence to sustain a verdict, an appellate court does not resolve conflicts of evidence, pass on credibility of witnesses, evaluate explanations, or reweigh

evidence concerning factual questions submitted for disposition by a jury. A verdict in a civil case must be sustained if the evidence, viewed and construed most favorably to the prevailing party, is sufficient to support that verdict. In an appellate review of a verdict, the prevailing party is entitled to every reasonable inference deducible from the evidence. See, *Williams v. Monarch Transp., supra*; *Rahmig v. Mosley Machinery Co.*, 226 Neb. 423, 412 N.W.2d 56 (1987).

## BACKGROUND

Blair began working for PMI under an oral contract in 1973. At that time, she received an employee manual which supplied general information about company policies, but which did not contain any company procedure for resolution of employee grievances or set out a procedure for disciplining employees or terminating their employment.

In 1985, Blair received a new employee manual which, on its first page, stated:

## NOTICE

1. This manual is neither a contract of employment, nor does it express or imply terms of employment. Rather it is a compilation of rules, regulations, policies, procedures and guidelines assembled to orient and assist new employees at PMIC/PLIC with items that affect their daily working relationship, and to reacquaint current employees with the same information.

. . . .

3. The information contained herein is not to be construed in any manner to be either an expressed or implied term of employment, or a practice, procedure, or benefit of any kind or nature that you are guaranteed as an employee of PMIC/PLIC.

4. The employer/employee relationship at PMIC/PLIC is an employment at will relationship. Employees may leave at any time and/or may be terminated without cause.

On page 10, where specific disciplinary guidelines were set out, the manual provided that "[e]mployees may be terminated without cause and/or if previous disciplinary action fails to

correct violations, or if a violation is so serious as to warrant immediate termination."

After Blair received the new manual, PMI launched an investigation in 1985 concerning possible drug abuse among PMI employees. During an interview conducted by a PMI investigator and attended by a stenographer who made shorthand notes of the interview, Blair said that she had given pills, which she called "white crosses," to other PMI employees. Although Blair stated that the pills contained only caffeine, the investigator led her to believe that the pills were a controlled substance. Near the conclusion of the interview, the investigator told Blair that she might be subject to criminal charges as a result of her transactions involving the white crosses and offered Blair the opportunity to resign from her employment. Blair then signed a written resignation form and left employment with PMI.

## BLAIR'S SUIT

Blair sued PMI and claimed that PMI failed to follow company procedure specified in PMI's employee handbook for disciplinary action and termination of employment. Blair further claimed that PMI fired her without good cause, and, therefore, wrongfully terminated her employment. Blair also alleged that PMI's conduct in discharging her constituted a malicious termination of employment. The district court sustained PMI's demurrer to the allegation regarding malicious termination of Blair's employment. In response to Blair's allegations, PMI asserted that, because Blair was an employee at will, there was no restriction, such as a good cause prerequisite, on its right to fire Blair.

When PMI objected to Blair's interrogatories concerning identity of other PMI employees who were investigated for possible drug abuse or who left PMI's employment after the investigation, Blair moved for an order requiring PMI to answer the interrogatories. Blair also requested documents from PMI regarding its drug investigation. After PMI refused to supply the documents, Blair sought an order for production of the investigative documents. The court denied Blair's motion for compulsory discovery, and refused to compel PMI to

answer the interrogatories or produce the requested documents.

At trial, over Blair's hearsay objection, the transcription of the stenographer's shorthand notes made during Blair's interview by the PMI investigator was received in evidence. Additionally, a PMI manager testified that, contrary to Blair's assertion, employees were told that the first page of the employee manual expressed company policy and further testified that PMI employees were never told to disregard paragraph 4 on page 1 of the employee manual, the statement concerning the "at will relationship" and discharge from employment "without cause."

The court instructed the jury on various aspects of an employment contract, including the elements of a contract and an employer's right to fire an employee without good cause for such termination of employment if the contract involves an employment at will. The court also instructed that an employee handbook may be a part of the contract of employment and that provisions of the employment contract, including an employee handbook, may be orally modified by the employer. Consequently, the alternative but dichotomous factual questions submitted to the jury concerning termination of Blair's employment were whether the initial and oral contract for employment at will existed and whether PMI had modified the at-will contract so that cause was necessary for termination of Blair's employment. In response to those questions, the jury returned a general verdict in favor of PMI. Therefore, in view of the questions submitted to the jury, the general verdict implicitly contains the finding that Blair was an employee at will and not an employee whose modified contract of employment could be terminated only for cause.

## ASSIGNMENTS OF ERROR

In her appeal, Blair contends that her hearsay objection should have been sustained for exclusion of the transcribed stenographic notes made during the interview by PMI's investigator. She also claims that the trial court should have compelled discovery as requested concerning PMI's answers to interrogatories and production of documents pertaining to PMI's drug investigation relative to Blair's dismissal from

employment with PMI. Also, Blair claims that the court erred by refusing to give Blair's tendered instruction regarding PMI's knowledge of possible drug abuse at the time of Blair's dismissal from employment. Blair further contends that the district court erred in sustaining PMI's demurrer to Blair's allegation that the company had maliciously terminated her employment.

## CONSEQUENCES OF EMPLOYMENT AT WILL

The evidence authorizes the verdict that Blair had an unmodified oral contract for employment at PMI's will rather than a contract of employment which might be terminated only for cause. The employee manual states that the manual is not a contract for employment and does not provide terms of employment with PMI, and expressly informs employees that their employment with PMI is an "at will relationship [which] may be terminated without cause."

"It is well established in Nebraska that when employment is not for a definite term, and there are no contractual or statutory restrictions upon the right of discharge, an employer may lawfully discharge an employee whenever and for whatever cause it chooses without incurring liability." *Johnston v. Panhandle Co-op Assn.*, 225 Neb. 732, 736, 408 N.W.2d 261, 265 (1987). See, also, *Jeffers v. Bishop Clarkson Memorial Hosp.*, 222 Neb. 829, 387 N.W.2d 692 (1986); *Mueller v. Union Pacific Railroad*, 220 Neb. 742, 371 N.W.2d 732 (1985).

In Blair's case, the jury, having considered the evidence under proper instruction, concluded that Blair was employed pursuant to an unmodified oral contract at PMI's will. Consequently, consistent with existing Nebraska law, Blair's employment was terminable at PMI's will without any prerequisite legally valid cause for termination of employment. Since Blair was PMI's at-will employee, PMI could terminate Blair's employment at any time without cause. See, *Johnston v. Panhandle Co-op Assn., supra*; *Jeffers v. Bishop Clarkson Memorial Hosp., supra*; *Mueller v. Union Pacific Railroad, supra*.

Certain exceptions to the "terminable-at-will" rule have, however, been recognized by this court. Those instances include where the discharge infringes upon a

constitutionally protected interest of the employee and where a statute or contract prohibits an employer from discharging an employee for a particular reason or without good cause.

*White v. Ardan, Inc.*, 230 Neb. 11, 15, 430 N.W.2d 27, 30 (1988).

None of the exceptions indicated in *White v. Ardan, Inc.* are present in Blair's case. As an at-will employee whose employment was terminated, Blair is not entitled to recover from PMI under the facts determined by the jury or the law enunciated by this court. Consequently, the verdict against Blair is sustained.

We need not delve into admissibility of the transcribed stenographic notes during the interview by the PMI investigator. Admissibility of the transcription is immaterial in Blair's appeal because PMI could have discharged Blair from at-will employment even without the information contained in .the transcribed notes and even if the interview itself had never taken place. For the same reason, we do not examine the propriety of the district court's ruling on Blair's request for compulsory discovery concerning PMI's answers to inter-rogatories and production of the investigative documents. In her appellate brief, Blair argues that "[d]isclosure of the information and documents requested in the remaining Interrogatories and Request for Documents is necessary to allow the Plaintiff to rebut the allegation that Blair was terminated for cause . . . ." Brief for appellant at 38. In light of the basic questions for submission to the jury in Blair's case, cause for termination of employment was irrelevant to disprove a contract for employment at will and irrelevant to prove a modified at-will contract requiring cause for employment termination. Under the circumstances, we find no abuse of discretion regarding the district court's ruling on discovery matters. See *Bump v. Firemens Ins. Co.*, 221 Neb. 678, 380 N.W.2d 268 (1986) (discovery rulings are upheld on appeal in the absence of a trial court's abuse of discretion). See, also, *Younkin v. Younkin*, 221 Neb. 134, 375 N.W.2d 894 (1985).

Blair's complaint about the district court's sustaining PMI's demurrer and eliminating malicious termination of employ-

ment is without merit. In *White v. Ardan, Inc.*, 230 Neb. at 15, 430 N.W.2d at 30, this court stated:

> [O]ur attention has not been directed to, nor have we found, any Nebraska case that recognizes a cause of action sounding in tort for malicious termination of employment. As previously stated, unless constitutionally, statutorily, or contractually prohibited, an employer may terminate an at-will employee at any time with or without reason and not be liable for his actions.

Consequently, the district court properly removed malicious termination of employment as an aspect of the proceedings against PMI.

Next, Blair contends that her discharge from employment violates public policy of the State of Nebraska. However, in *Johnston v. Panhandle Co-op Assn.*, 225 Neb. at 742-43, 408 N.W.2d at 268-69, this court reaffirmed rejection of the public policy exception as a basis for recovery on an employment at-will contract:

> We discussed the public policy exception to the employment-at-will rule in *Mueller v. Union Pacific Railroad*, 220 Neb. 742, 371 N.W.2d 732 (1985): " 'We recognize, however, that the "employment at will" rule is not, in some jurisdictions, an absolute bar to a claim of wrongful discharge. In a number of jurisdictions, an exception to the "terminable at will" rule has been articulated in recent years. Under this exceptions, an employee may claim damages for wrongful discharge when the motivation for the firing contravenes public policy. [Citations omitted.]
>
> 'So far as we are able to ascertain, Nebraska has not adopted this exception to the present time. Assuming *arguendo*, however, that such an exception were to be recognized in this jurisdiction, it is clear in this case that the plaintiff has failed in his burden to prove that his discharge was violative of a public policy of this state. We have held that "[c]ourts should be cautious in holding contracts void on ground of public policy and before they do so prejudice to the public interest should clearly appear." *Beaver Lake Assn. v. Beaver Lake Corp.*, 200

Neb. 685, 691, 264 N.W.2d 871, 875 (1978).' " 220 Neb. at 749-50, 371 N.W.2d at 737-38, quoting *Mau v. Omaha Nat. Bank*, 207 Neb. 308, 299 N.W.2d 147 (1980).

We again decline to adopt the public policy exception at this time.

Finally, Blair claims that the trial court should have given her tendered instruction: If the jury found that Blair's employment contract was modified and required cause for termination of employment, then PMI "cannot use as cause conduct, knowledge of which [PMI] did not have at the time of the termination." The preceding instruction was conditioned on existence of a modified at-will contract of employment. The jury determined that PMI did not modify its employment contract with Blair. Therefore, the court's refusal to give the tendered and conditional instruction was not prejudicial under the circumstances.

Because Blair's employment with PMI was pursuant to a contract which was terminable at PMI's will, and since Blair has shown no exception to the general rule that employment of an at-will employee may be terminated without cause, we affirm the district court's judgment entered on the verdict for PMI.

AFFIRMED.