**IT IS FURTHER ORDERED** that Defendant Dykstra's motion to dismiss is **DENIED.** [11]

**IT IS FURTHER ORDERED** that the Lewis County Defendants' motion for more definite statement is **DENIED.** [24]

**IT IS FURTHER ORDERED** that the Lewis County Defendants' motion to strike is **DENIED.** [26]

**IT IS FINALLY ORDERED** that the Lewis County Defendants' motion to transfer venue is **DENIED** as moot. [28]

Warren **BUZEK,** Plaintiff,

v.

**PAWNEE COUNTY, NEBRASKA; Don Luedders; Gordon Clement; and Ferdinand Friedly,** Defendants.

No. 4:01CV3308.

United States District Court,
D. Nebraska.

April 16, 2002.

Carole J. McMahon–Boies, Pepperl, McMahon–Boies law Firm, Lincoln, NE, for plaintiff.

Terri M. Weeks, Richard L. Boucher, Boucher Law Firm, Lincoln, NE, for defendants.

## MEMORANDUM AND ORDER

KOPF, District Judge.

This matter is before the court on the defendants' motion to dismiss (filing 10), filed pursuant to Fed.R.Civ.P. 12(b)(1) and (6). The motion will be granted in part and denied in part.

### I. Plaintiff's Allegations

The plaintiff, Warren Buzek, was employed as a deputy in the Pawnee County Sheriff's Department until March 28, 2001, when he was terminated by the sheriff, allegedly at the behest of the individual defendants, Don Luedders, Gordon Clement, and Ferdinand Friedly, who comprise the county board of commissioners. Buzek, who unsuccessfully sought appointment to the sheriff's position in January 2001, alleges that his failure to win the promotion was due in part to the fact that he had supported the former sheriff during a recall campaign by the county board. Buzek also cites his support of the former sheriff as being a factor in his termination, together with: (1) his criticism that the new sheriff appointed by the board had a history of DWI convictions; (2) his investigation and reporting of an automobile accident involving commissioner Friedly; and (3) his statement at a county board meeting that 911 calls were not being responded to because of a protest over the former sheriff's firing of commissioner Luedders' wife from her job as dispatcher. Buzek also claims that the termination violated the county's personnel policies and was done by the commissioners in contravention of Nebraska's public meetings law,

Neb.Rev.Stat. Ann. §§ 84–1408 to 84–1414 (Lexis 2000 & Supp.2001).

Buzek asserts six claims for relief: (1) an equal protection claim, based upon Buzek's membership in a class of individuals "who had supported the previous Sheriff whose position with Pawnee County had been terminated"; (2) a due process claim, based upon the defendants' alleged violation of personnel policies and the public meetings law; (3) a first amendment "freedom-of-speech" claim, based upon Buzek's expressions of concern regarding the new sheriff's DWI convictions, commissioner's Friedly's accident report, and the lack of 911 response in the county; (4) a state-law claim for violation of the public meetings law; (5) a state-law claim for wrongful discharge; and (6) a first amendment "freedom-of-association" claim, based upon Buzek's support of the previous sheriff.

The constitutional claims are brought under 42 U.S.C. § 1983, as to which the court has original jurisdiction under 28 U.S.C. § 1343. The equal protection claim (count 1) concerns both the termination of Buzek's employment as deputy sheriff and his failure to receive the sheriff's appointment, while the due process claim (count 2) and the first amendment retaliation claims (counts 3, 6) are concerned only with the termination.[1] The state-law claims (counts 4, 5), as to which the plaintiff alleges the court has supplemental jurisdiction under 28 U.S.C. § 1367, also relate only to the termination.

## II. Defendants' Motion

Pawnee County has moved to dismiss the equal protection claim and first amendment claims (counts 1, 3, and 6) for plaintiff's failure to allege that the constitutional deprivations resulted from a county policy, and to dismiss the wrongful discharge claim (count 5) as non-actionable. The individual defendants have also moved to dismiss the equal protection claim (count 1) and the wrongful discharge claim (count 5) under Rule 12(b)(6). All defendants claim that the court lacks subject matter jurisdiction over the public meetings law claim (count 4).

### A. Public Meetings Law Claim

I first consider the jurisdictional issue. The defendants contend that a suit claiming a violation of the Nebraska public meetings law can only be brought in state court, as provided in Neb.Rev.Stat. Ann. § 84–1414(3) (Lexis 2000).[2] Buzek, however, attempts to bring suit on this claim under Neb.Rev.Stat. Ann. § 20–148(1) (Michie 1995), which generally provides that "[a]ny person ..., except any political subdivision, who subjects or causes to be subjected any citizen of this state ... to the deprivation of any rights, privileges, or immunities secured by the United States Constitution or the Constitution and laws of the State of Nebraska, shall be liable to such injured person in a civil action or other proper proceeding for redress brought by such injured person." I conclude that both of these legal positions are wrong.

---

1. Although the plaintiff has alleged that his reporting of Friedly's accident also led to the denial of the promotion (see complaint, ¶ 7), the "freedom-of-speech" claim (count 3) is limited to an allegation that "[t]he termination of Petitioner's job was in part done to punish him for the foregoing expressions of concern...." (Complaint, ¶ 20.)

2. Section 84–1414(3) provides in part: "Any citizen of this state may commence a suit in

the district court of the county in which the public body ordinarily meets or in which the plaintiff resides for the purpose of requiring compliance with or preventing violations of [sections 79–317, 84–1408 to 84–1414, and 85–104], for the purpose of declaring an action of a public body void, or for the purpose of determining the applicability of such sections to discussions or decisions of the public body."

Section 20–148 "does not purport to create new causes of action or rights but merely provides a civil avenue of recovery for violations of constitutional or statutory civil rights. provisions." *Ritchie v. Walker Mfg. Co.,* 963 F.2d 1119, 1122 (8th Cir.1992). *See, also, Goolsby v. Anderson,* 250 Neb. 306, 313, 549 N.W.2d 153, 157 (1996) (Section 20–148 "is a procedural statute which does not create any new substantive rights."). Thus, in order to maintain suit under section 20–148, Buzek must show that he has been deprived of some right, privilege, or immunity secured by the public meetings law.

Buzek alleges only that "[t]he decision resulting in the termination of the petitioner's job was done outside of a Commission's meeting by the three individually named Respondent's (sic) and is prohibited by the Open Meetings Law 94–1408 R.R.S. (sic) which is actionable under 20–148 RRS." (Complaint, filing 1, ¶ 22.) While section 84–1408 requires that "[e]very meeting of a public body shall be open to the public in order that citizens may exercise their democratic privilege of attending and speaking at meetings of public bodies," and section 84–1411 provides that "the public shall have the right to attend and the right to speak at meetings of public bodies," Buzek is not claiming injury because he was denied the right or privilege of attending and speaking at a meeting of the county board. Buzek's complaint, rather, is that "the decision to terminate [his] job was made outside of

the meetings required by the Nebraska law and was done without the notices required under the Nebraska open meetings law." (Complaint, ¶ 12.) In essence, he is claiming that the commissioners conducted an unlawful meeting, which led to his termination. *See, e.g., Aldridge v. School Dist. of North Platte,* 225 Neb. 580, 581–83 407 N.W.2d 495, 496–97 (1987) (involving citizen's claim that quorum of school board members improperly met to discuss superintendent's suspension). This alleged public meetings law violation also forms a partial basis for Buzek's due process claim. (Complaint, ¶ 15.)

Even if the complaint could be construed to allege a deprivation of Buzek's civil rights under the public meetings law, an action cannot be brought against the county under section 20–148.[3] Nor does this section apply to individuals acting in their capacities as public officials. *Cole v. Clarke,* 8 Neb.App. 614, 620, 598 N.W.2d 768, 772 (1999) (dismissing personal injury claim brought against prison officials); *Sinn v. City of Seward,* 3 Neb.App. 59, 77, 523 N.W.2d 39, 50 (1994) (dismissing wage claim by city employee brought against city administrator and city council members). As a matter of pleading necessity, the alleged decision to terminate Buzek must have been made by the individual defendants acting in their collective official capacity, meeting as the county board of commissioners, for otherwise there could be no possible violation of the public meetings law (which applies only to the meetings of a "public body").[4] Consequently,

---

3. Section 20–148 has been narrowly construed as being "limited to private acts of discrimination, presumably of constitutional dimension, by private employers." *Sinn,* 3 Neb.App. at 76, 523 N.W.2d at 50. *See, also, Ritchie,* 963 F.2d at 1122–23 ("[T]he intent of section 20–148 is to allow plaintiffs to bypass the time-consuming administrative procedures of the Equal Employment Opportunity Commission. This legislative history demon-

strates that the statute does not sweep as far as it first appears.").

4. Buzek alleges that the action "is brought against Don Luedders, Gordon Clement and Ferdinand Friedly in their official and individual capacities for violation of the rights secured to the Plaintiff pursuant to the Nebraska Open Meetings Law 84–1408 RRS." (Complaint, ¶ 1.)

Buzek's public meetings law claim (count 4) is not actionable under section 20–148.

■ To the extent that Buzek has stated a claim for relief that is actionable under section 84–1414, an issue which I purposely do not decide,[5] this court has subject matter jurisdiction over such claim by virtue of 28 U.S.C. § 1367(a). Subject to certain exceptions that are not applicable here, this statute provides in part: "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Thus, as restated by the Court of Appeals: "A district court may exercise supplemental jurisdiction over state law claims that arise from the same nucleus of operative fact as the plaintiff's federal claims and when the plaintiff would ordinarily be expected to try all the claims in one judicial proceeding." *Cossette v. Minnesota Power & Light,* 188 F.3d 964, 973 (8th Cir. 1999). I conclude that this pleading situation exists here, although, as discussed above, Buzek's public meetings law claim cannot properly be classified as a civil rights claim.

■ The fact that section 84–1414(3) specifies that a suit may be commenced "in the district court of the county in which the public body ordinarily meets or in which the plaintiff resides" does not deprive the federal court of jurisdiction. In the first place, this appears to be a venue statute rather than a jurisdictional statute. By permitting a citizen suit to be brought in the plaintiff's county of residence, section 84–1414(3) is more expansive than the general venue statute, Neb.Rev.Stat. Ann. § 25–403.01 (Michie 1995).[6] This strongly suggests that the purpose of the statute is to provide for venue rather than to establish jurisdiction. *See Muir v. Nebraska Department of Motor Vehicles,* 260 Neb. 450, 456, 618 N.W.2d 444, 449 (2000) (flexibility inherent in statute regarding conduct of license revocation hearings indicated venue rather than jurisdictional purpose). *See, also, Blitzkie v. State,* 228 Neb. 409, 416, 422 N.W.2d 773, 777–78 (1988) (State Tort Claim Act provision that "[s]uits shall be brought in the county in which the act or omission occurred, or if the act or omission occurred outside the boundaries of the State of Nebraska, in the district court for Lancaster County" pertained to venue, not jurisdiction). Secondly, even if the Nebraska Supreme Court were to construe section 84–1414(3) as a jurisdictional statute, such a construction would not be determinative of the question of federal court jurisdiction. "In determining its own jurisdiction, a District Court of the United States must look to the sources of its power and not to acts of states which have no power to enlarge or to contract the federal jurisdiction.... It necessarily follows that whenever a state provides a substantive right and a remedy for its enforcement in a judicial proceeding in any state court, a judicial controversy involving the right may be adjudicated by a United States District Court if it has jurisdiction

---

5. The defendants have not asserted a Rule 12(b)(6) motion with respect to this claim. My discussion concerning the plaintiff's inability to maintain the claim under section 20–148 is occasioned only by the supplemental jurisdiction issue.

6. Except for actions involving real estate, section 25–403.01 provides that venue is proper "(1) in the county where any defendant resides, (2) in the county were the cause of action arose, (3) in the county where the transaction or some part of the transaction occurred out of which the cause of action arose, or (4) if all defendants are nonresidents of this state, in any county."

under the Constitution and laws of the United States." *Poitra v. Demarrias,* 502 F.2d 23, 26–27 (8th Cir.1974) (quoting *Markham v. City of Newport News,* 292 F.2d 711, 713–716 (4th Cir.1961)). Because I find that the jurisdictional requirements of section 1367(a) have been satisfied, the defendants' Rule 12(b)(1) motion will be denied.[7]

While resisting dismissal on jurisdictional grounds, Buzek has suggested that it would be appropriate for the court to decline to exercise supplemental jurisdiction over the public meetings law claim, as authorized by 28 U.S.C. § 1367(c), and has advised that "[t]he plaintiff has filed a challenge to the county action in Nemaha County under [section 84–14140]."[8] (Plaintiff's brief, at 7.) That being the case, and in light of the defendants' objection to this court exercising jurisdiction over the public meetings law claim, I conclude that the claim should be dismissed *sua sponte,* without prejudice, under section 1367(c)(4). *See Blue Dane Simmental Corp. v. American Simmental Ass'n,* 952 F.Supp. 1399, 1412–13 (D.Neb.1997) (finding both "exceptional circumstances" and "compelling reasons" for declining to exercise supplemental jurisdiction over identical claims pending in state court). Considering that "[a]ctions for relief under the public meet-

ings laws are tried as equitable cases, given that the relief sought is in the nature of a declaration that action taken in violation of the laws is void or voidable," *Hansmeyer v. Nebraska Public Power Dist.,* 6 Neb. App. 889, 893, 578 N.W.2d 476, 480 (1998), *aff'd,* 256 Neb. 1, 588 N.W.2d 589 (1999), and also considering that proof of this claim is likely to be completely distinct from proof of the plaintiff's other claims,[9] dismissal is also justified under section 1367(c)(2) (because the claim "substantially predominates" over the federal claims). *See Blue Dane, supra,* at 1412–13 (applying *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), to assess whether state claims predominate as a matter of proof, remedy, or issues). In sum, it would not serve the "values of economy, convenience, fairness and comity" for this court to exercise supplemental jurisdiction over the public meetings law claim. *See id.,* at 1414.

### B. Wrongful Discharge Claim

I next consider Buzek's state-law claim for wrongful discharge (count 5), which all defendants have moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). For this claim, Buzek simply alleges that "[i]t is the articulated policy of the State of Nebraska

---

**7.** *But cf. Lampman v. McCook Public Schools,* 54 F.Supp.2d 945, 946 (D.Neb.1999) (stating that plaintiff could not bring Nebraska Fair Employment Practice Act claim in federal court solely under section 48–1119(4) of the Act, which permits a complainant before the Nebraska Equal Opportunity Commission "at any stage of the proceedings prior to dismissal, [to] file an action directly in the district court of the county where such alleged violation occurred."); *Fritz v. Wal–Mart Stores, Inc.,* 158 F.Supp.2d 991, 1000 (D.Neb. 2001) (same); *Sidak v. Pinnacle Telemarketing Ltd.,* 182 F.Supp.2d 873, 879 (D.Neb.2002) (same).

**8.** I assume either that the reference to Nemaha County is erroneous (inasmuch as another clearly erroneous reference is made to Nemaha County at page 8 of the brief), or else that Buzek now resides in that county.

**9.** Even though Buzek has alleged a violation of his rights under the public meetings law in support of his due process claim, I question the viability of this claim as a matter of law. *See, e.g., Kyle v. Morton High School,* 144 F.3d 448, 452 (7th Cir.1998) (procedural requirements of Illinois Open Meetings Act did not confer substantive rights for due process clause purposes). Inasmuch as this issue has not been raised by the defendants, however, I make no determination at this time.

that sheriff department personnel not be fired due to political action and support of candidates; that the support of the previous sheriff in the recall election in part caused the termination of Petitioner's job." (Complaint, ¶ 23.)

The defendants argue that the claim is without any basis in law, and they emphasize that the plaintiff has failed to identify the source of the alleged public policy. Buzek responds that policy is set forth in Neb.Rev.Stat. §§ 23–1721 to 23–1737, the declared purpose of which is "to guarantee to all citizens a fair and equal employment opportunity for public service in the office of the county sheriff in counties having a population of twenty-five thousand inhabitants or more, to establish conditions of service which will attract officers and employees of character and capacity, and to increase the efficiency of the county sheriff's office by the establishment of a merit system." Neb.Rev.Stat. Ann. § 23–1721 (Lexis 1999). In particular, it is provided that "[n]o person in the classified service or seeking admission thereto shall be appointed, reduced, or removed, or in any way favored or discriminated against because of his political . . . opinions or affiliations, . . . ." Neb.Rev.Stat. Ann. § 23–1735 (Lexis 1999). As stated by the Nebraska Supreme Court in *Freese v. County of Douglas*, 210 Neb. 521, 522, 315 N.W.2d 638, 640 (1982), one purpose of this merit system is "to insulate deputy sheriffs in the designated counties from the hazards of politics which a career deputy sheriff might suffer each time a new sheriff was elected to office."

Buzek tacitly concedes that Pawnee County is not subject to sections 23–1721 to 23–1737,[10] but argues that the public policy expressed in those statutes applies to all Nebraska counties. In support of this argument, he cites *Simonsen v. Hendricks Sodding & Landscaping, Inc.*, 5 Neb.App. 263, 269, 558 N.W.2d 825, 829 (1997), in which a panel of the Nebraska Court of Appeals found a general statement of public policy in a provision of the Nebraska Fair Employment Practices Act (NFEPA) that declared: "It shall be an unlawful employment practice for an employer [as defined in the Act] to discriminate against any of his or her employees . . . because he or she . . . has opposed any practice or refused to carry out any action unlawful under federal law or the laws of this state." *See* Neb.Rev.Stat. Ann. § 48–1114 (Michie 1995). The plaintiff in *Simonsen* claimed that he was fired because he refused to drive a truck with defective brakes (a misdemeanor offense under a Nebraska statute adopting portions of federal motor carrier safety regulations). Even though the defendant was not shown to be an "employer" for purposes of the NFEPA (because there was no evidence that the defendant had fifteen employees), the court reasoned that the plaintiff had a valid wrongful discharge claim because section 48–1114 of the Act "support[s] the rather obvious conclusion that it is against the public policy of this state for employers to require employees to violate the law in order to remain employed." *Id.* at 270, 558 N.W.2d at 830.

The *Simonsen* opinion broadly declares that "the law in Nebraska is that an at-will employee has a cause of action for wrongful discharge against his or her former employer if the employee was discharged in violation of a contractual right or a statutory restriction or when the motiva-

---

**10.** The plaintiff's brief states (at page 8): "The defendant may argue that the statute itself was not violated because Nemaha County (sic) is too small for the statute to apply to it." According to the latest census data, the popu- lation of Pawnee County on April 1, 2000, was only 3,087. U.S. Census Bureau, Census 2000 Summary File 1, *available at* http:// www.census.gov/census2000/states/ne .html.

tion for the discharge contravenes public policy." *Id.* at 269, 558 N.W.2d at 829. This appears to be an accurate statement of Nebraska law, but the "public policy" exception has rarely been applied.[11] As recognized by the Eighth Circuit in *Smith v. Gould, Inc.*, 918 F.2d 1361, 1365 (8th Cir.1990), a limited public policy exception to the employment-at-will doctrine has been applied by the Nebraska Supreme Court "where the employer discharges the employee for reporting, in good faith and upon reasonable cause, suspected criminal behavior by the employer, *Schriner v. Meginnis Ford Co.*, 228 Neb. 85, 421 N.W.2d 755 (1988) (discharge for reporting employer's suspected violation of odometer tampering statute), and where the employer discharges the employee for a reason that is prohibited by a specific state statute, *Ambroz v. Cornhusker Square, Ltd.*, 226 Neb. 899, 416 N.W.2d 510 (1987) (discharge for refusing to take a lie detector test)."

In *Blair v. Physicians Mut. Ins. Co.*, 242 Neb. 652, 658–59, 496 N.W.2d 483, 487 (1993), however, the Nebraska Supreme Court expressly refused to adopt a general public policy exception, noting that it had "reaffirmed rejection of the public policy exception as a basis for recovery on an employment at-will contract" in *Johnston v. Panhandle Co-op. Assn.*, 225 Neb. 732, 742–43, 408 N.W.2d 261, 268–69 (1987). The Supreme Court also quoted language

from its opinion in *White v. Ardan, Inc.*, 230 Neb. 11, 15, 430 N.W.2d 27, 30 (1988), for the proposition that the only recognized exceptions to the employment at-will doctrine in Nebraska include instances "where the discharge infringes upon a constitutionally protected interest of the employee and where a statute or contract prohibits an employer from discharging an employee for a particular reason or without good cause." *Blair*, 242 Neb. at 656–57, 496 N.W.2d at 486. Similarly, the Supreme Court recently declared in *Dossett v. First State Bank*, 261 Neb. 959, 965, 627 N.W.2d 131, 137 (2001), that "Nebraska is an employment-at-will state, where, unless constitutionally, statutorily, or contractually prohibited, an employer may terminate an at-will employee at any time with or without reason, without incurring liability."[12]

The Nebraska Supreme Court's most recent pronouncement on the subject is *Malone. v. American Business Information*, 262 Neb. 733, 739, 634 N.W.2d 788, 793 (2001), which emphasizes that there must be a "very clear mandate of public policy" to warrant recognition of an exception to the employment-at-will doctrine. *See, also, Ambroz*, 226 Neb. at 905, 416 N.W.2d at 515. Finding that the Nebraska Wage Payment and Collection Act contained neither criminal penalties nor any specific provision restricting the employ-

---

**11.** Ten months after *Simonsen* was decided, another panel of the Court of Appeals (including two out of three members of the Simonsen panel), ruled in an opinion not designated for permanent publication, *Andersen v. American Red Cross*, No. A–96–588, 1997 WL 627610 (Neb.App. Oct.07, 1997), that a discharged employee could not maintain a common law action for wrongful discharge based on a statement of public policy in the NFEPA, but that he could amend his pleadings to bring the action pursuant to section 20–148 for the alleged violation of the Act (*i.e.*, retaliatory discharge for reporting the Red Cross

to the FDA for improper blood platelet storage). The Court's *Simonsen* decision was not discussed. While the *Anderson* decision is not precedent, *see* Rule 2(E)(4) of the Rules of Practice and Procedure in the Nebraska Supreme Court and Court of Appeals, it does illustrate the novelty of the public policy exception in Nebraska.

**12.** The Court in *Dossett* refused to consider an argument raised for the first time on appeal that the plaintiff's termination violated public policy embodied in Nebraska's public meetings law. *Id.* at 963–64, 627 N.W.2d at 136.

er's common-law right to discharge an at-will employee, the Court held that the Act did not "declare ... an important public policy with such clarity as to provide a basis for a civil action for wrongful discharge." *Malone*, 262 Neb. at 740, 634 N.W.2d at 793 (quoting *Schriner*, 228 Neb. at 89, 421 N.W.2d at 757).

■ I likewise conclude as a matter of law that sections 23–1721 to 23–1737, which may be characterized as a "little Hatch Act," do not constitute a sufficiently clear statement of public policy to support Buzek's claim of wrongful discharge. The merit system is designed to "insulate deputy sheriffs *in the designated counties* from the hazards of politics." *Freese, supra* (emphasis supplied). Thus, section 23–1735 affords protection to persons "in the classified service" from discrimination on account of their political opinions or affiliations. The term "classified service" includes "all deputy sheriffs including the jailer and matrons" (in counties having a population of twenty-five thousand inhabitants or more),[13] but does not include "the civilian employees of the office"; moreover, "the deputy sheriff designated by the sheriff as chief deputy is specifically excluded from sections 23–1721 to 23–1737." Neb.Rev.Stat. Ann. § 23–1726 (Lexis 1999). All persons entering the classified service are required to pass qualifying examinations, *see* Neb.Rev.Stat. Ann. § 23–1728 (Lexis 1999), and, following their admission, are expressly prohibited from "actively participat[ing] in any campaign by any candidate for public office." Neb.Rev. Stat. Ann. § 23–1736 (Lexis 1999).

■ Given these various statutory limitations, it simply cannot be concluded that sections 23–1721 to 23–1737 express a clear public policy "that sheriff department personnel [cannot] be fired due to political action and support of candidates," as alleged in the complaint. Because Buzek does not point to any other source of the alleged Nebraska policy, the defendants' motion to dismiss this claim will be granted.[14]

### C. First Amendment Claims

■ Although the complaint fails to state a claim for relief under Nebraska law for wrongful discharge based upon a public policy exception to the employment-at-will doctrine, it is firmly established as a matter of federal constitutional law that a public employee cannot be terminated for engaging in protected speech or protected political activity. *See, e.g., Buzek v. County of Saunders*, 972 F.2d 992, 995 (8th Cir.1992) (free speech); *Jones v. Fitzgerald*, 285 F.3d 705, 711 (8th Cir.2002) (freedom of association). Pawnee County argues, however, that Buzek has failed to allege that a county policy was "the moving force" behind the claimed first amendment violations. *See Monell v. Department of Soc. Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

This argument ignores the rather obvious fact that county policy is established by the county board. *See* Neb.Rev.Stat.

---

**13.** Of Nebraska's 93 counties, only 11 have at least 25,000 inhabitants. *See* U.S. Census Bureau, Census 2000 Summary File 1, *available at* http:// www.census.gov/census2000/ states/ ne.html.

**14.** Additionally, it is apparent that the individual defendants cannot be sued at common law for wrongful discharge in any event. *See Riggs v. County of Banner*, 159 F.Supp.2d 1158, 1171 (D.Neb.2001) (dismissing "public policy" wrongful discharge claim against individual county commissioners). *See, also, Arthur v. Armco, Inc.*, 122 F.Supp.2d 876, 880 (S.D.Ohio 2000) (dismissing claims against plaintiff's supervisors because "the [Ohio] caselaw recognizing common law claims for wrongful discharge in violation of public policy speaks solely in terms of the liability of an 'employer.' ").

Ann. § 23–103 (Lexis 1999). Buzek generally alleges that his constitutional rights "were violated by the County and the [commissioners] in their individual capacities," and, with respect to the freedom-of-association claim (count 6), specifically alleges that "the actions of the Pawnee County Board in ordering the new sheriff to fire the plaintiff was a violation of the Petitioner's First and Fourteenth Amendment rights." (Complaint, ¶¶ 1, 24.) The allegations of the free-speech claim (count 3) are less clear, but may reasonably be construed to allege that unlawful action was taken by the county board.

Furthermore, with respect to Buzek's termination, the county might be held liable for the sheriff's action without regard to any action taken by the county board. *See Buzek*, 972 F.2d at 996 (sheriff possessed the discretionary, policymaking authority necessary to hold county liable for the decision to terminate deputy for engaging in protected speech.) Under Nebraska law, the county board determines the number of deputy sheriffs and fixes their compensation, but it is the sheriff who has the power of appointment. *See State v. Harris*, 100 Neb. 745, 161 N.W. 253 (1917); Neb.Rev.Stat. Ann. §§ 23–1704.01 and 23–1704.4 (Lexis 1999). The county sheriff is an elective office. *See* Neb.Rev.Stat. Ann. § 32–520 (Lexis 2000).[15]

### D. Equal Protection Claim

■ The county's argument that it cannot be held liable on the equal protection claim (count 1) fails for the same reasons. Thus, all that remains for consideration is the argument by the individual defendants that the plaintiff has failed to allege "that similarly situated people have been treated differently." *See Brandt v. Davis*, 191 F.3d 887, 893 (8th Cir.1999). *See, also,*

*Domina v. Van Pelt*, 235 F.3d 1091, 1099–1100 (8th Cir.2000) (dismissing county employees' equal protection claims for failure to allege that they were treated less favorably than others). Examining the complaint in this case, however, Buzek specifically alleges that "the treatment accorded those who had supported the previous sheriff differed from the treatment accorded to those similarly situated employees who had not supported him." (Complaint, ¶ 13.) This allegation is sufficient to withstand the defendants' motion to dismiss.

### III. Conclusion

For the reasons stated, I will dismiss the state-law claims (counts 4, 5) and the case will proceed on the section 1983 claims (counts 1, 2, 3, 6) only.

Accordingly,

IT IS ORDERED that:

1. Defendants' motion to dismiss (filing 10) is granted in part and denied in part, as follows:

   a. Plaintiff's wrongful discharge claim (count 5) is dismissed for failure to state a claim upon which relief can be granted; and

   b. In all other respects, Defendants' motion is denied.

2. Upon the court's own motion, pursuant to 28 U.S.C. § 1367(c)(2) and (4), Plaintiff's public meetings law claim (count 4) is dismissed without prejudice.

---

15. Where, as evidently happened here, the sheriff is removed from office as the result of a recall election, the county board has the power to fill the vacancy by appointment. *See* Neb.Rev.Stat. Ann. §§ 32–567(2) and 32–1308(2) (Lexis 2000).